Robert S. FREMONT, Ronald L. McCarthy and Henry W. Dybal, Plaintiffs,

v.

McGRAW–EDISON COMPANY, Halo Lighting Division of McGraw-Edison Company Profit Sharing and Retirement Trust, and Raymond H. Giesecke, John Logan, Edward Blettner, Edward J. Williams, Dan T. Thomson and Exchange National Bank of Chicago as Trustees of Halo Lighting Division of McGraw-Edison Company Profit Sharing and Retirement Trust, Defendants.

No. 76 C 3766.

United States District Court, N. D. Illinois, E. D.

Nov. 8, 1978.

George V. Bobrinskoy, Jr., Frank D. Mayer, Jr., Mayer, Brown & Platt, Chicago, Ill., for plaintiffs.

Byron L. Gregory, McDermott, Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

CROWLEY, District Judge.

This civil action was brought by three former employees of McGraw-Edison Company to recover certain pension and profit sharing benefits. Plaintiffs, Robert Fremont, Ronald McCarthy, and Henry Dybal assert that their entitlement to these benefits under the Halo Lighting Division of McGraw-Edison Company Profit Sharing and Retirement Trust (Trust) [1] was wrongfully denied in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. In response defendants argue that ERISA is inapplicable. Further, defendants assert in counterclaim, that by his wrongful act plaintiff Fremont has breached his fiduciary duty to the beneficiaries of the Trust and that by their actions, plaintiffs Fremont and McCarthy have forfeited any interest they might have had in the trust as well as committed an act of common law fraud against the Trust and its beneficiaries. Before the Court at this time are counter-motions for summary judgment and plaintiffs' motion to dismiss the counterclaims.

For the most part, plaintiffs do not contest defendants' characterization of the conduct which according to defendants worked a forfeiture of plaintiffs' pension benefits: the theft by plaintiffs of trade secrets and confidential information from McGraw-Edison which plaintiffs used to establish Juno Lighting, Inc., a competitor of McGraw-Edison. The bone of contention between the parties, rather, is when the forfeiture took place.[2] According to plaintiffs' theory, the forfeiture did not take place until Novem-

1. On September 30, 1976, the Trust was amended and restated effective January 1, 1976. When discussing the Trust before and/or after amendment, we will refer to the Trust as "original" or "restated".

2. The following discussion involves only the claims of plaintiffs Fremont and McCarthy. As to plaintiff Dybal, there is apparently no dispute as to the applicability of ERISA. Rather the dispute arises over whether the forfeiture of Dybal's benefits fits within the limited range of forfeitures permitted by ERISA. Dybal's claim will be discussed separately.

ber 5, 1976 when the Trust Committee formally declared the forfeiture. Because the forfeiture occurred ten months after the effective date of Section 203 of ERISA, 29 U.S.C. § 1053, which arguably prohibits such forfeitures, the Committee's action was invalid. Defendants respond that by the terms of the Trust, plaintiffs' acts of theft in and of themselves acted to divest plaintiffs of any interest in the Trust. Because these thefts took place no later than November, 1975, two months before the effective date of § 203, the forfeiture took place well before the prohibition was effective. According to defendants, on November 5, 1976, the Committee merely reaffirmed that the thefts and consequential forfeiture had occurred.

Section 203 of ERISA, 29 U.S.C. § 1053, is part of an overall scheme to protect participants and beneficiaries of private pension plans. In furtherance of this goal Congress provided for the nonforfeitability of certain benefits. Among the common practices which Congress sought to eliminate was the forfeiture of benefits accumulated by an employee who later engaged in competitive or other improper conduct. To eradicate these so-called "bad boy" forfeitures, Congress established minimum vesting requirements and prohibited forfeiture of vested benefits.

■ Section 203 is applicable in the case of plan years beginning after December 31, 1975. 29 U.S.C. § 1061(b)(1). A participant whose employment continued into 1976 comes within the aegis of the Act. Conversely, an employee whose employment (and participation in the plan) was terminated before the effective date of Section 203 is not covered. Cf., *Martin v. Bankers Trust Co.*, 417 F.Supp. 923 (W.D.Va., 1976) aff'd 565 F.2d 1276 (4th Cir., 1977). It is true that plaintiffs' cause of action did not technically arise until November, 1976 when they requested and were officially denied payment of their pension benefits by the Trust Committee. *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518 (N.D. Cal., 1977). We do not, however, accept plaintiffs' argument that because official recognition of the forfeiture took place after January 1, 1976, Section 203's prohibition is applicable. Section 203 is effective as to plan years beginning January 1, 1976. If a claimant's interest in the plan is determined as of a date prior to January 1, 1976, Section 203 is inapplicable. Any other result would require an unauthorized retroactive application of the statute. Cf. *Martin v. Bankers Trust Co.*, 417 F.Supp. 923 (W.D. Va., 1976), aff'd 565 F.2d 1276 (1977).

■ Similarly, we reject defendants' proposition that the forfeiture occurred as of the date plaintiff first engaged in acts of theft against McGraw-Edison.[3] Vis-a-vis an employee whose employment continues beyond January 1, 1976, this attempt to avoid the minimum vesting requirements of ERISA is ineffective.[4]

---

3. Though defendants' position on this question appears to conflict with this Court's interpretation, we note that in their motion for summary judgment Defendants assert that:

   *Section 203 has no application to Fremont's claim since that Section only protects interests of those employed by the employer contributor to the Plan as of January 1, 1976.* (Defendants' Memo in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment, p. 2).

4. This result *is true under either the original or* restated plan. The original plan provided that the result of wrongful conduct was that "No part of the share of any of the following participants shall become vested in them . . ." This is merely a standard for the vesting of benefits and must comply with the vesting requirements of ERISA. Under the restated plan the language, though different, appears also to set out a vesting requirement. (Section 8–2, Exhibit III) However, even if construed in a different light we seriously doubt the propriety of its application. We find defendants' position that plaintiffs' wrongful and decisive conduct in 1975 is governed by a plan amended in September, 1976, retroactive to January 1, 1976 incongruous and unconvincing.

   Further, were we to accept defendants' argument, it would not necessarily result in a forfeiture of plaintiff's benefits. There is authority for the proposition that attempted forfeitures between January 1, 1975 (when state law governing private pension plans was superceded) and January 1, 1976 are subject to a strict standard of reasonableness. *Amory v. Boyden Assoc., Inc.*, 434 F.Supp. 671 (S.D.N.Y.1976).

■ Applying this standard, therefore, the threshold question and the only factual question of significance is when plaintiffs Fremont and McCarthy terminated employment with McGraw-Edison. As to plaintiff McCarthy, the parties do not dispute the fact that plaintiff began employment with McGraw-Edison in 1961 and terminated the relationship on May 3, 1976. ERISA provides that though an employer may defer vesting of benefits until an employee has completed ten years of service, after ten years, an employee must have a 100% non-forfeitable right in his "accrued benefit derived from employer contributions." 29 U.S.C. § 1053(a)(2)(A). Because § 203 is applicable to McCarthy, under the minimum vesting requirements of ERISA, McCarthy is entitled to 100% of his accrued benefits.

■ As to plaintiff Fremont, both parties acknowledge that Fremont's active participation in company affairs ended in November, 1975. However, by the terms of a termination agreement, McGraw-Edison agreed to pay Fremont and employ him "through January 1, 1976." (letter dated November 11, 1975, plaintiff's deposition Exhibit # 2). Relying on this agreement plaintiff Fremont concludes that his employment continued into 1976 and is covered by § 203 and defendants conclude that Fremont's employment, at the very most, continued only through 1975. There appears to be, at first blush, a genuine issue of material fact precluding summary relief. Rule 56 Fed.R.Civ.P. However, the very terms of the agreement make it clear that the parties intended, that at least technically, Fremont's employment continue through and until the end of 1975—but no longer. Of significance is the language:

> You [Fremont] will not be entitled to any other compensation from the Company except retirement benefits . . . computed to include the contribution to the trusts for the year 1975.

While we are normally disinclined to grant summary relief where the resolution of a dispute hinges on the parties' intent, it is clear that Fremont intended that his employment and participation in the Trust would end with the benefits accrued in 1975. Those benefits are not covered by § 203. Accordingly, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment as to plaintiff Fremont is granted.

As to plaintiff Dybal, defendants assert arguments which require an altogether different analysis. Dybal was employed by McGraw-Edison from November 16, 1970 until March 19, 1976. Defendants argue that because Dybal was employed for less than ten years, forfeiture of his accrued benefits is permitted by ERISA. According to defendants, under Section 8.2 of the restated plan, a participant's entire account balance can be forfeited if the participant commits any one of a number of enunciated acts. Dybal committed such acts in 1976 when he stole trade secrets and other confidential material belonging to McGraw. Again plaintiff does not contradict defendants' characterization of these acts. Plaintiff simply argues that defendant cannot retroactively amend the plan in such a way as to adversely affect his rights.[5] 29 U.S.C. § 1053(c)(1), (d). Defendants respond that not only was it required that the amendment be retroactive but also that the amendment is valid as it does not have the effect of "changing any vesting schedule" as prohibited by Section 203(c)(1)(A). Further, defendants argue that such a vesting schedule as set out in the restated plan is valid under ERISA § 203(a)(2)(A).

We need not reach that issue, however, because we find that under either plan, Dybal's benefits were properly forfeited. Under ERISA all private pension plans must meet one of three minimum vesting

Also, at least one commentator has suggested that all attempted forfeitures after January 1, 1975 are invalid. Lee, ERISA's "Bad Boy": Forfeiture For Cause In Retirement Plans, 9 Loy.Chi.L.J. 137 (1977).

5. Plaintiff's position that the retroactive amendment is ineffective as to his claim as a

direct contradiction to his earlier position that Dybal is entitled to 60% of his benefits under the restated plan. (Memo of Law In Support of Plaintiff's Motion for Judgment on Complaint and in Support of Motion to Dismiss Counterclaim, p. 10).

standards. However, as the Treasury regulations make clear, where a plan provides for a more generous vesting schedule than required by ERISA, to the "extent that rights are not required to be nonforfeitable to satisfy minimum vesting standards . . they may be forfeited without regard to the limitation on forfeitability required by this section." Treas.Reg. § 1.411(a)–4(a). 42 Fed.Reg. 42,326 (Aug. 23, 1977). See Lee, *ERISA's "Bad Boy": Forfeiture For Cause in Retirement Plans*, 9 Loy.Chi.L.J. 137 (1977).

■ Both the original and restated plans contain a vesting schedule akin to the "ten year full vesting," whereby the employee has a 100% vested interest in accrued benefits after ten years of service. Under this type of schedule, vesting can be deferred for the first nine years during which time forfeiture is permitted. Under the restated plan McGraw-Edison explicitly provides for this deferment with permissible forfeiture. Under the original plan, because the apparently more liberal or generous vesting schedule is in excess of the minimum required, ERISA does not protect against exercise of the "bad boy" forfeiture. Accordingly, the forfeiture of Dybal's interest was valid.

Finally, plaintiffs move to dismiss the counterclaims for failure to state a claim upon which relief can be granted. In their responsive pleading defendants set out two counterclaims. Count I of the counterclaim seeks equitable relief from Fremont for violation of his fiduciary duties as Trustee of the Trust. Defendants argue that any benefits ultimately recovered by either Fremont or McCarthy are the result of Fremont's failure to reveal the scheme to steal confidential information and Fremont's further failure to declare a forfeiture as to his and McCarthy's interests in the Trust in violation of his fiduciary duty, 29 U.S.C. § 1109. Count II appears to allege common law fraud against McCarthy in that by concealing his acts of theft, he fraudulently obtained the protection of ERISA. Count II also seeks equitable relief.

■ ERISA provides a private cause of action for enforcement of its requirements.

29 U.S.C. § 1132. Under that provision, fiduciaries of a covered pension plan may bring a cause of action seeking an injunction or other equitable relief for violation of the Act or terms of the plan. 29 U.S.C. § 1132(a)(3). Though we do not condone the acts of theft perpetrated by Fremont and McCarthy, they were neither violations of ERISA or as to McCarthy, of an enforcible provision of the Trust. We agree with plaintiffs that by their counterclaim, defendants seek to accomplish by indirection a result which contradicts both the letter and spirit of ERISA. Therefore, plaintiffs' motion to dismiss the counterclaims is granted.

Accordingly, plaintiffs' motion for summary judgment is granted in part, denied in part. Plaintiffs' motion is granted as to plaintiff McCarthy and denied in all other respects. Defendants' motion for summary judgment is granted in part, denied in part. Defendants' motion is granted as to plaintiffs Fremont and Dybal and denied in all other respects. Plaintiffs' motion to dismiss the counterclaim is granted.