Charles A. NEDROW, Plaintiff,

v.

MacFARLANE AND HAYS COMPANY EMPLOYEES' PROFIT SHARING PLAN AND TRUST, Defendant.

Civ. A. No. 78–73216.

United States District Court,
E. D. Michigan, S. D.

Sept. 18, 1979.

Harold A. Larson, Larson & Harms, Farmington Hills, Mich., for plaintiff.

Patrick J. Keating, Schuur, Keating & Wells, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The cross motions for summary judgment filed in this case require the court to look into the extent to which a pension plan, subject to the strictures of the Employee Retirement Income Security Act of 1974 (ERISA), may utilize forfeiture clauses to induce certain behavior from its participants.

Prior to ERISA, pension plans commonly included clauses under which, for a variety of what the employer felt were improper activities, an employee could forfeit part or all of the pension benefits which he or she had in some cases worked many years to build up. One of the major reasons for the enactment of ERISA was to do away with this practice and thus to help workers claim the benefits they had earned. 29 U.S.C. § 1001.

In this case, the MacFarlane and Hays Company, as part of its compensation of employees, makes regular contributions to the defendant MacFarlane and Hays Company Employees' Profit Sharing Plan and Trust. In addition to the constantly increasing total contribution, the plan provides that the employee is "vested" in an increasing percentage of the total contribution as the years pass. This means that, barring forfeiture, an employee is guaranteed the vested portion of his account whether he or she continues to work at the company or not. The vesting schedule, which is Section 6.4(b) of the plan, is as follows:

| Years of Service | Vested Percentage |
| --- | --- |
| 4 | 40 |
| 5 | 45 |
| 6 | 50 |
| 7 | 60 |
| 8 | 70 |
| 9 | 80 |
| 10 | 90 |
| 11 | 100 |

Counterbalancing this "vesting", however, is a section of the plan under which certain acts of an employee can work a forfeiture of all of that employee's pension account, including that which has "vested" according to the above schedule. Section 6.8 of the plan, the so-called "bad boy" clause, provides:

6.8 FORFEITURE OF BENEFITS FOR CERTAIN CAUSES. Notwithstanding any other provisions of this Agreement to the contrary, the right of any Participant or former Participant to receive or to have paid to any other person and the right of any such other person to receive any benefits hereunder shall terminate and shall be forever forfeited if such Participant's employment with the Employer is terminated because of his fraud, embezzlement or dishonesty or if the Participant or former Participant, within a period of one year after the termination of his employment, engages in any occupation or in a business which, in the Administrator's opinion, is in competition with the Employer, or becomes associated in any manner with

such a competitor. This Section shall be inapplicable if such Participant has met the requirements that would qualify him for retirement benefits under Section 6.1 or has completed 10 years of Service, as defined by Section 6.4(b) and 6.4(e), or after the Plan has been terminated or contributions under it have been completely discontinued.

Plaintiff, who had completed six years of service under the plan, had accumulated $22,154.95 in his pension account when he left the company. Less than one year after plaintiff left, the company determined that he had engaged in competition with the company and thereby had forfeited any rights he might otherwise have had under the plan in accordance with Section 6.8 of the plan.

Plaintiff claims that considering the plan as a whole the bad boy clause is illegal under ERISA, and he asks the court to award him the 50% of his account which had "vested" under the plan or $11,077.48. Defendant claims that the forfeiture provision of the plan was carefully drawn so as to be permissible under ERISA, and that therefore, it owes plaintiff nothing.

Section 203(a)(2) of ERISA, 29 U.S.C. § 1053(a)(2), provides as follows:·

§ 1053. Minimum vesting standards

(a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

＊ ＊ ＊ ＊ ＊ ＊

(2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).

(A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

(B) A plan satisfies the requirements of this subparagraph if an employee who has completed at least 5 years of service has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions which percentage is not less than the percentage determined under the following table:

| Years of Service: | Nonforfeitable percentage |
|---|---|
| 5 | 25 |
| 6 | 30 |
| 7 | 35 |
| 8 | 40 |
| 9 | 45 |
| 10 | 50 |
| 11 | 60 |
| 12 | 70 |
| 13 | 80 |
| 14 | 90 |
| 15 or more | 100. |

(C)(i) A plan satisfies the requirements of this subparagraph if a participant who is not separated from the service, who has completed at least 5 years of service, and with respect to whom the sum of his age and years of service equals or exceeds 45, has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions determined under the following table:

| If years of service equal or exceed— | and sum of age and service equals or exceeds— | then the nonforfeitable percentage is— |
|---|---|---|
| 5 | 45 | 50 |
| 6 | 47 | 60 |
| 7 | 49 | 70 |
| 8 | 51 | 80 |
| 9 | 53 | 90 |
| 10 | 55 | 100. |

(ii) Notwithstanding clause (i), a plan shall not be treated as satisfying the requirements of this subparagraph unless any participant who has completed at least 10 years of service has a nonforfeitable right to not less than 50 percent of his accrued benefit derived from employer contributions and to not less than an additional 10 percent for each additional year of service thereafter.

This provision gives each employee a great deal of protection while at the same time it permits each employer to decide which type of nonforfeitability schedule best fits the needs of it and its employees. To pass muster under ERISA, a pension plan must meet one of the three schedules quoted above.

In examining the defendant plan, one must keep in mind that the word "vested" used in the plan does not have the same meaning as the word "nonforfeitable" used in ERISA.[1] Section 6.8 of the plan clearly is intended to make the "vested" rights of participants with less than 10 years of service forfeitable. With that in mind, the nonforfeitable percentages of contributions under the plan in the absence of any external limitations are as follows:

| Years of Service | Nonforfeitable Percentage |
|---|---|
| 4 | 0 |
| 5 | 0 |
| 6 | 0 |
| 7 | 0 |
| 8 | 0 |
| 9 | 0 |
| 10 | 90 |
| 11 | 100 |

This plan clearly does not meet the requirements of subparagraph (C) of 29 U.S.C. § 1053(a)(2) because there is no mention of any combination of age and years of service.

A quick glance at Section 6.8 of the plan might lead one to believe that it was the intent of the drafters of the plan to qualify the plan under subparagraph (A). The fact that the forfeiture provision applies only to members with less than 10 years of service is something to consider, but subparagraph (A) is satisfied only if the employees are entitled to 100% of the contributions after 10 years. Under the defendant plan, employees are entitled to only 90% after 10 years.

The only possibility left then is subparagraph (B). Under that subparagraph, the plan would qualify if it were not for Section 6.8 of the plan. When the plan is considered as a whole, however, this subparagraph is not satisfied either, because employees with 5, 6, 7, 8, and 9 years of service are not guaranteed the requisite nonforfeitable percentage.

■ Since the court should construe the plan so as to make it legal if that is possible, it will consider ERISA to have become a *de jure* part of the plan. This consideration of the statutory scheme as a part of the plan itself is not a unique decision. For many years, the law has been that in the heavily regulated field of insurance, statutory requirements are read into a contract where the wording of the contract itself is either silent on an issue or contrary to statute. *State Farm v. Shelly*, 394 Mich. 448, 231 N.W.2d 641 (1975); *New Amsterdam Casualty Co. v. Jones*, 135 F.2d 191 (6th Cir. 1943); *Galkin v. Lincoln Mutual Casualty Co.*, 279 Mich. 327, 272 N.W. 694 (1937). Since the regulation of the pension field through ERISA is quite similar to the regulation of insurance in scope and in purpose, it is reasonable to treat the statutes in the same fashion.

Reading the contract along with the statutory scheme does not give an obvious answer to the question presented by this case, but a careful review of the possible answers points to the most reasonable and, therefore, the proper result.

The question is what is the rate at which the pension contributions are nonforfeitable? We must look at each of the possibilities under 29 U.S.C. § 1053(a)(2). To meet the requirements of subparagraph (C), the court would have to bring into the equation the age of the employees, a factor which is not a part of the plan at all. The court should not make such a major change in the plan if it can be avoided.

1. "The term 'nonforfeitable' when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. . . ." 29 U.S.C. § 1002(19).

938

Similarly, to meet the requirements of subparagraph (A), the court would have to make a substantive change in the vesting schedule of the plan (by changing the "vested" percentage for 10 year employees from 90% to 100%), and this should be avoided as well.

 Fortunately, it is quite easy to adjust the written plan to meet the requirements of subparagraph (B). The vesting schedule can remain as it is, while the forfeiture provision can be read so as to apply to only that percentage of the vested contributions that may lawfully be forfeited. While ERISA does set minimum nonforfeitable percentages, it does not prohibit forfeitures that do not go beyond those percentages. *Fremont v. McGraw-Edison Co.*, 460 F.Supp. 599 (N.D.Ill.1978); 26 C.F.R. Sec. 1.411(a)–4.

In this case, since plaintiff had six years of service, ERISA entitled him to a nonforfeitable percentage of 30 [under 29 U.S.C. § 1053(a)(2)(B)]. While the plan, under Section 6.4(b), gave him a "vested" right to 50% of the company's contributions, Section 6.8 worked a forfeiture on that portion of the contributions that ERISA permits to be forfeited, in this case, all but 30%.

Therefore, plaintiff is entitled to $6,646.49. In accordance with this opinion, plaintiff's motion for summary judgment is granted and defendant's motion is denied.

So ordered.