Gilbert **MONTGOMERY**

v.

M. David **LOWE** et al.

Civ. A. No. H–79–1268.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 30, 1981.

---

Kenneth T. Fibich, Bonham, Carrington & Fox, Houston, Tex., for plaintiff.

George A. Rustay and Vincent L. Marino, Dow, Cogburn & Friedman, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

CIRE, District Judge.

This case arises under 29 U.S.C. § 1132(a)(1)(b), which permits any participant in an ERISA plan, 29 U.S.C. § 1002(2), to recover benefits wrongfully withheld or to clarify rights to future benefits.

Plaintiff is a former employee of M. David Lowe Personnel Services and is seeking to recover, pursuant to the terms of the M. David Lowe Group Employees Profit Sharing Plan and Trust (hereinafter the Plan), those benefits to which he believes he is entitled. His employment with M. David Lowe began in 1970 and terminated in March 1978; at the end of the plan year, January 31, 1979, his trust account amounted to $25,821.00.

The terms of the Plan provide that under ordinary circumstances, 60% of this amount would have vested, so that plaintiff would be entitled to $15,492.60 then or at retirement age, at the trustee's discretion. Defendant contends, however, that plaintiff engaged in a competitive business shortly after leaving M. David Lowe Personnel Services, and that such conduct triggered the forfeiture clause of the Plan. Section 5.09 of the Plan states:

" . . . with respect to any Participant or former Participant who has not complet-

ed ten (10) years of service, his otherwise nonforfeitable Accrued Benefit attributable to Employer contributions may be forfeited . . . under the following circumstances:

(a) * * *

(b) Enters into a business (in any county where Employer has an office) competitive directly or indirectly with the Employer, either as principal, employee, officer, director, shareholder, or advisor, while a Participant or within one (1) year after termination of service with the Employer.

" . . . with respect to subparagraph (b) above, a forfeiture shall occur under the Plan as of the last day of the plan year in which the Participant commits the forbidden act specified in such subparagraph."

The effect of Section 5.09 is that an employee's benefits are conditionally rather than unconditionally vested for the first ten years.

Plaintiff argues first that he was not in competition with his former employer, or alternatively that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1381, prevents forfeiture in any event. The parties are before the Court on cross motions for summary judgment, and a hearing was held on the issue of competition.

It is clear from the hearing that Gilbert Montgomery, the plaintiff, was employed by M. David Lowe in various Harris County locations from 1970 until 1978. Prior to the termination of his employment, he performed "executive search" duties whereby he sought out candidates for executive-level jobs. Within a few weeks of leaving M. David Lowe, the plaintiff established his own "executive search" business in Harris County. Although Mr. Montgomery did not deliberately solicit business from M. David Lowe clients, he was contacted by and conducted a search for a business which he had served while working for Lowe.

On these facts, the Court concludes that there was competition and that the forfeiture clause of the Plan was triggered.

Plaintiff argues that application of a "rigorous reasonableness standard," *Amory v. Boyden Associates, Inc.*, 434 F.Supp. 671 (S.D.N.Y.1976), should compel a conclusion that the acts complained of were too insubstantial to constitute competition and hence to justify a forfeiture in light of Houston's populous and diverse job market. *Parenti v. Wytmar*, 49 Ill.App.3d 860, 7 Ill.Dec. 618, 364 N.E.2d 909 (1977). Such an analysis would be proper if the non-competitive clause were ancillary to the employment contract itself and M. David Lowe sought to enjoin Montgomery's professional activities. *Cardinal Personnel, Inc. v. Schneider*, 544 S.W.2d 845 (Tex.Civ.App.1976). But a distinction may be drawn where the consequence of violating a non-competitive clause is a clearly-defined and understood forfeiture of accrued benefits contributed by the protected party. *Diakoff v. American Re-Insurance Co.*, 492 F.Supp. 1115 (S.D.N.Y.1980). The burden in such a case is contemplated by both parties and does not in any way interfere with Montgomery's livelihood.

The pre-emption provision in ERISA, 29 U.S.C. § 1144, means that Federal courts must develop substantive law for interpreting private retirement plans. *Shaw v. Kruidenier*, 470 F.Supp. 1375 (S.D.Iowa 1979). The Court need not abandon principles of common law which yield results consistent with ERISA's goals.

Plaintiff contends that forfeiture is inconsistent with ERISA's goals and is therefore prohibited even if he was competing with his former employer. The employer, however, argues that nothing in ERISA prevents giving full force and effect to the forfeiture clause once competition is determined. For the reasons set forth below, the Court concludes that plaintiff is entitled to 40% of the accrued benefits.

■ The Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1381, was enacted with the broad goal of protecting the interests of participants in pension plans. ERISA requires, *inter alia*, that private plans meet the minimum vesting standards set out in 29 U.S.C. § 1053.

Vested for purposes of ERISA means unconditionally vested. The vesting standards give employers some flexibility in establishing or maintaining plans while at the same time ensuring that employees will not be subjected to the harsh and unfair results associated with many pre-ERISA plans. H.R.Rep.93–807, 93d Cong., 2d Sess., as reprinted in 3 U.S.Code Cong. and Adm.News 4639, 4670, 4725–26 (1974).

An employer may pattern the vesting provisions of its plan after any one of three formulas set out in 29 U.S.C. § 1053. The first, at 29 U.S.C. § 1053(a)(2)(A), is known as cliff vesting, and requires that at the end of 10 years an employee must have a nonforfeitable right to 100% of his accrued benefits from employer contributions. This type of plan is administratively convenient for employers, in that it avoids the record keeping generated by partial vesting, and it permits the employer to postpone any vesting until the employee has rendered many years of service. Since it requires 100% vesting at that time, however, it is more beneficial to 10-year employees than either of the other plans. H.R.Rep.93–807, *supra*, at 4721. Another option is graded vesting, 29 U.S.C. § 1053(A)(2)(B), which provides for a nonforfeitable interest of 25% at 5 years of service. The nonforfeitable percentage increases each year until 100% is reached at 15 years. By requiring some vesting at a relatively early point, this plan permits career mobility for employees and spreads the employer's cost of retirement benefits over manageable yearly levels. H.R.Rep.93–807, *supra*, at 4721. The third alternate plan, at 29 U.S.C. § 1053(a)(2)(C), uses a formula of years in service plus employee age; this plan is not relevant to the instant case.

■ Regardless of which type of vesting plan an employer selects, he must provide that the minimum nonforfeitability standards of that plan are met. Congress intended that an employee have these nonforfeitable interests regardless of his conduct; in fact, the legislative history of ERISA clearly demonstrates that "bad boy" forfeiture provisions, such as that in defendant's plan, were not to be enforced to the extent that they caused forfeiture of interests falling within the minimum standards. Aside from some limited exceptions not relevant here, "no rights, once they are required to be vested, may be lost by the employee under any circumstances .... For example, a vested benefit is not to be forfeited because the employee later went to work for a competitor, or in some other way was considered "disloyal" to the employer." H.R.Rep.93–807, *supra*, at 4725–26 (footnotes omitted). See *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979), and *Nedrow v. MacFarlane and Hays Company Employees' Profit Sharing Plan and Trust*, 476 F.Supp. 934 (E.D.Mich.1979).

This is not to say that a plan may never provide for forfeiture of vested interests; only those "required to be vested" by ERISA may not be lost. Thus an employer may cause interests to vest sooner, or to a greater extent, than ERISA mandates. The employer's generosity entitles it to subject the "excess" vested interest to any forfeiture conditions it chooses to impose, including a "bad boy" clause. *Id.* The "excess" is thus conditionally, not unconditionally, vested. The regulations promulgated pursuant to ERISA bear out this scheme: "To the extent that rights are not required to be nonforfeitable to satisfy the minimum vesting standards ... they may be forfeited ...." Treas.Reg. § 1.411(a)–4(a).

■ Whether there is any "excess" subject to forfeiture is determined first by characterizing a plan as cliff or graded, and then comparing its terms to the minimum terms required by ERISA. See *Nedrow v. MacFarlane & Hays Company Employees Profit Sharing and Trust*, 476 F.Supp. 934 (E.D.Mich.1979). This result is supported by the regulations. Treas.Reg. § 1.411(a)–4(c) gives this example:

> "Corporation A's plan provides that an employee is fully vested in his employer-derived accrued benefit after completion of five years of service. The plan also provides, that if an employee works for a competitor he forfeits his rights in the plan. Such provision could result in the forfeiture of an Employee's Rights which

are required to be nonforfeitable under Section 411 and therefore the plan would not satisfy the requirements of Section 411. If the plan limited the forfeiture to employees who completed less than ten years of service, the plan would not fail to satisfy the requirements of Section 411 because the forfeitures under this provision are limited to the rights which are in excess of the minimum required to be nonforfeitable under Section 411(a)(2)(A)."

In this example, the employer provided for 100% vesting 5 years sooner than he needed to with a cliff vesting plan, since cliff vesting requires 100% vesting after ten years of service. Those 5 years are "excess" and may be forfeited, but the employer may not promulgate an across-the-board forfeiture clause that would affect 10-year employees as well as 5-year employees. ERISA demands that if an employer selects a cliff vesting plan, the employee's interest not only vests but becomes nonforfeitable at 10 years.

Defendant's plan provides for gradual vesting according to the following schedule:

| Years of Service with Employer | Percent of Nonforfeitable Accrued Benefit |
|---|---|
| Less than 4 years | None |
| At least 4 years | 25% |
| " " 5 " | 30% |
| " " 6 " | 40% |
| " " 7 " | 50% |
| " " 8 " | 60% |
| " " 9 " | 70% |
| " " 10 " | 80% |
| " " 11 " | 90% |
| " " 12 " | 100% |

The minimum standards under ERISA for a graded vesting plan are less generous than those provided by defendant. ERISA sets the following schedule:

| Years of Service | Nonforfeitable Percentage |
|---|---|
| 5 | 25% |
| 6 | 30% |
| 7 | 35% |
| 8 | 40% |
| 9 | 45% |
| 10 | 50% |
| 11 | 60% |
| 12 | 70% |
| 13 | 80% |
| 14 | 90% |
| 15 | 100% |

Defendant focuses on the example given in Treas.Reg. § 1.411(a)–4(c) above, and alleges that the regulation permits any forfeiture provision which affects only employees with less than 10 years' service, regardless of the type of plan used. Defendant's theory is that because it offered vesting earlier than 10 years, its plan exceeded the minimum ERISA standards, and hence the bad boy provision causes forfeiture of unprotected interests. But that treasury regulation applies to cliff vesting, while defendant's plan provides for graded vesting.

It is true that defendant's plan exceeds the minimum standards of graded vesting, since defendant's plan is graded to achieve full vesting in 12 rather than 15 years, and each step of defendant's plan involves a proportionately higher percentage than ERISA requires. But because defendant offers full vesting at 12 rather than at 10 years, it cannot be analyzed in terms of cliff vesting; to exceed the cliff vesting standards defendant would have to offer full vesting at rather than after the 10-year mark. Defendant may not characterize his plan as cliff vesting for purposes of enforcing a forfeiture clause and as graded for purposes of reaching full vesting.

To the extent defendant exceeds the graded vesting standards of ERISA, its "bad boy" provision works a permissible forfeiture. Here, plaintiff is an 8-year employee, and would normally be entitled to 60% of the accrued benefit. But having triggered the forfeiture clause, plaintiff will lose some benefits. ERISA protects 40% of the accrued benefit for an 8-year employee, so plaintiff is entitled to 40% of $25,821.00, or $10,328.40. The remaining 20% is forfeited under the "bad boy" provisions of the plan.

The Court notes that plaintiff is not entitled to a money judgment at this time, since the Plan authorizes the trustee to pay benefits at a later date. Accordingly, plaintiff's prayer for interest is denied. The Court also finds it inappropriate to award attor-

ney's fees in this case and plaintiff's prayer for same is denied.

It is accordingly ORDERED that plaintiff's motion for summary judgment is GRANTED to the extent that plaintiff is declared to have a nonforfeitable interest of 40% of his accrued benefits under the Plan, and DENIED in all other respects. Defendant's motion for summary judgment is GRANTED to the extent that plaintiff is declared to have forfeited any accrued benefits in excess of 40%, and DENIED in all other respects.