Jerry M. WATTS, Plaintiff,

v.

WIKOFF COLOR CORP. OF S. C., Defendant.

Civ. A. No. 3–80–0770–H.

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 6, 1981.

Thomas J. Beswick, Law Offices of Larry Parnass, Irving, Tex., for plaintiff.

Timothy A. Duffy and Vera Bangs, Crutcher, Hull, Ramsey & Jordan, Dallas, Tex., for defendant.

## ORDER

SANDERS, District Judge.

This action is brought by the Plaintiff pursuant to the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* to compel immediate payment of pension funds by his former employer, Wikoff Color Corporation ("Wikoff"). Upon his discharge by Wikoff in 1979 after eight years of employment, Plaintiff had a non-forfeitable and vested interest of sixty-four percent of $9,827.53 in the company's pension plan which he seeks in the form of a lump sum payment. The case is now before the Court on the Defendant's motion for summary judgment on the ground that the Plaintiff forfeited the option of a lump sum payment of benefits under the provisions of the pension plan when he accepted employment with a competing manufacturer.

The following facts may be gleaned from the uncontroverted record before the Court. Watts began his employment with Wikoff

in September 1971 and worked there continuously until July 1979 when he was discharged by the company. At the time of his official termination in August 1979, Watts was a participant in the Wikoff "Central Bank Master Profit Sharing Plan and Trust" (Plan) and had accumulated a 64% vested interest in the balance of his employer contribution account. Sometime subsequent to July 1979 Watts made two requests to the Profit Sharing Committee, which administered the plan, for immediate payment of his pension benefits. After the filing of the Plaintiff's application, the Committee received information that he had accepted employment with a company in competition with Wikoff, a fact which is not disputed by the Plaintiff. Phillip Lambert, Wikoff's treasurer and a member of the Committee, then notified Watts that his pension benefits would be paid in the form of an annuity payable at the normal retirement age of 65. Plaintiff then instituted this suit pursuant to 29 U.S.C. § 1132(e) to obtain immediate payment of the non-forfeitable percentage of his benefits.

As the foregoing summary indicates, the material facts in this case are not in dispute. What is in dispute is the validity of a key provision of the plan, Schedule II, as it has been applied in the context of this case. Schedule II was adopted by the Committee as an amendment to the plan in February 1977 and afforded the Committee discretionary authority to disallow cash payment of vested funds in four instances. In particular, Schedule II provides:

*Withdrawal benefits*: Upon withdrawal from the plan, the vested portion of a participant's account shall be distributed in either of the following methods that he may choose:

Option A. An annuity contract payable to the participant at normal retirement age.

Option B. Cash in a lump sum after a waiting period of not less than two years or more than 26 months. The vested portion of the participant's account shall be placed in a bank savings certificate account to earn interest for him up to the time of the lump sum distribution.

The right to receive benefits under option B may be disallowed by the Profit-Sharing Committee to any withdrawn employee determined to be in competition with the Company, or by any employee terminated for dishonesty, disclosing trade secrets or conviction of a felony or crime involving moral turpitude.

The Defendant's motion for summary judgment rests on the provisions of Schedule II which it asserts is a valid exercise of the Profit Sharing Committee's discretionary authority under ERISA. The Plaintiff contends, however, that the terms and conditions of Schedule II as applied to an employee who is involuntarily discharged are unconscionable and therefore void as against public policy. In addition, Watts argues that he is not bound by Schedule II since he never received any notice of the amendment to the plan.

The first question is whether a provision which ties payment of lump sum benefits to noncompetition with the company is in conflict with the policies which underpin ERISA. "In enacting ERISA, Congress was concerned about the dramatic growth of employee benefit plans in recent years and the importance they have assumed to millions of workers." *Cate v. Blue Cross & Blue Shield*, 434 F.Supp. 1187, 1189–90 (E.D.Tenn.1977). Prior to the enactment of ERISA, "aggrieved employees were often left without a remedy in seeking to recover benefits allegedly due them under a pension plan ... or to correct breaches of duty by fiduciaries in their management of Pension funds." *Martin v. Bankers Trust Co.*, 417 F.Supp. 923, 924 (W.D.Va.1976), *affirmed*, 565 F.2d 1276 (4th Cir. 1977). ERISA was aimed at filling this "major gap in federal labor laws," *Id.* and represents an expression of Congressional policy "to give pension plan participants maximum protection of their rights under benefit plans." *Lewis v. Merrill Lynch, Pierce, Fenner & Smith*, 431 F.Supp. 271 (E.D.Pa.1977).

■ This action presents a different question, however, from the concerns which

underlay the passage of ERISA. Here, the Plaintiff is not complaining of any failure to pay pension benefits since there is no question that the Defendant fully intends to pay such upon Watts' reaching normal retirement age. What the Plaintiff seeks instead is an immediate payment of the vested interest in the pension plan. It is clear, however, that ERISA sought to protect *retirement* benefits of employees and that there is no right supplied by the statute for immediate payment of any pre-retirement benefits upon withdrawal from the plan.

The Plaintiff's interpretation rests on a unique reading of § 206(a) of ERISA upon which Section 8.01 of the Wikoff plan is founded. That section provides in pertinent part:

> (a) Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—
> (1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,
> (2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or
> (3) the participant terminated his service with the employer.

The Plaintiff contends that the word "latest" means the "most recent" of the events specified in the three subsequent subsections. However, as one court pointed out, "Congress never intended to impose upon a plan a requirement that any benefits be payable before age sixty-five." *Riley v. MEBA Pension Trust*, 452 F.Supp. 117, 120 (S.D.N.Y.), *affirmed on other grounds*, 586 F.2d 968 (2d Cir. 1978). *See, also, Denzer v. Purofied Down Products Corp.*, 474 F.Supp. 773 (S.D.N.Y.1979); *Ramirez v. Lowe*, 504 F.Supp. 21 (S.D.Tex.1979), *affirmed*, 639 F.2d 306 (5th Cir. 1980); *Montgomery v. Lowe*, 507 F.Supp. 618 (S.D.Tex.1981).

Even if the reading of Section 206(a) urged by the Plaintiff were accepted, it would appear that the adoption of Schedule II changed the method of payment for all withdrawal benefits made from the plan. Plaintiff argues that Schedule II is unenforceable against him because it is "unconscionable" and "against public policy." Since ERISA was enacted "to protect . . . the interests of participants in employee benefit plans . . .", 29 U.S.C. § 1001(b), and applies to all plans for employers engaged in interstate commerce, 29 U.S.C. § 1003, the Court is of the opinion that if Schedule II survives within the parameters of that statute it will likewise survive review under any public policy standard. Applying this examination, the Court concludes that the application of Schedule II to the Plaintiff is not prohibited by ERISA.

The linchpin of the Plaintiff's argument is that Schedule II unfairly penalizes an employee who is discharged by a company and who goes to work for a competitor. In many ways, Schedule II is similar to "bad boy" clauses which prior to ERISA allowed forfeiture of vested benefits when noncompetition clauses were violated by an employee. Congressional committee reports on ERISA make it clear that Congress sought to eliminate the forfeiture worked by the enforcement of such clauses by enacting minimum vesting clauses, and plans must now meet minimum vesting standards set out in 29 U.S.C. § 1053. To the extent that an employer's plan is more generous than required by ERISA and the vesting percentages exceed those required by the statute, Treasury regulations state that such excess benefits "may be forfeited without regard to the limitation of forfeitability required by this section." Treas.Reg. § 1.411(a)–4(a), 42 Fed.Reg. 42,326 (Aug. 23, 1977). The conclusion that a "bad boy" clause could be enforced to effect a forfeiture of plan benefits that exceeded the ERISA minimum vested amount has been accepted by courts in this circuit and others. *See Ramirez v. Lowe*, 504 F.Supp. 21 (S.D. Tex.1979), *affirmed* 639 F.2d 306 (5th Cir. 1980); *Montgomery v. Lowe*, 507 F.Supp. 618 (S.D.Tex.1981).

■ Wikoff's plan provides for a more generous vesting schedule than required by ERISA since after eight years the Plaintiff had acquired a 64% vested interest in his employer contribution account while the ERISA minimum standards only required a 40% vested interest. 29 U.S.C. § 1053; Treas.Reg. § 1.411(a)–4(a), *supra.* To the extent that the Defendant's plan exceeds these standards, the noncompetition clause could validly have been levied against the Plaintiff when he took employment with a competitor. The case before the Court, however, presents a far easier case since the enforcement of Wikoff's noncompetition clause has worked no forfeiture of any vested interests on the Plaintiff but has merely delayed the time of payment of his benefits until some future date upon retirement. Since the Court has already concluded that there is no right to immediate payment of pension benefits, Schedule II which merely provides the company with authority to delay benefits until retirement for an employee who goes to work for a competitor is not inconsistent with the goals of ERISA. Since the enforcement of Schedule II against the Plaintiff does not affect any of his rights to ultimate award of pension benefits, the fact that he may not have received notice of the amendment to the plan would not raise an issue of material fact sufficient to preclude summary judgment.

■ The only remaining issue which the denial of immediate lump sum benefits to the Plaintiff could conceivably raise is whether all plan members who are similarly situated have been treated equally under the provisions of Schedule II. *See, e.g., Denzer v. Purofied Down Products Corp., supra.* The clear weight of federal authority, however, is that the actions of the trustees or fiduciaries who are charged with the administration of the pension plan must be sustained as a matter of law unless the plaintiff can prove such actions have been arbitrary or capricious. *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357 (5th Cir. 1981); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir. 1979). The Plaintiff in this case, however, has failed to identify any genuine issue of material fact or to submit any adequate summary judgment evidence which would raise a question as to whether the plan's administrators acted in an arbitrary or capricious manner in their application of Schedule II. Although the criteria for summary judgment under Rule 56 are stringent, *see, e.g., Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir. 1980), in order to avoid such a grant, the party opposing the motion must demonstrate both the existence of a material fact and a genuine issue as to that material fact. *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir. 1980). In the light of the Lambert deposition submitted by the Defendant contending that it was the intent of the Committee to apply Schedule II to all relevant employees in a consistent manner, and the lack of any controverting evidence by the Plaintiff, the Court concludes that the Plaintiff has failed to support his burden under Rule 56 to show a genuine issue of material fact sufficient to preclude summary judgment.

■ The last matter for the Court's consideration is the question of an award of attorney's fees for Defendant. The Court has substantial discretion in making awards in ERISA cases. The statute itself provides, "In any action under this subchapter . . ., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). Included among the factors to be considered in a determination of whether fees should be awarded are (1) the degree of bad faith or culpability of the losing party, (2) the ability of this offending party to personally satisfy such an award, (3) whether or not an award of fees would deter other persons acting under similar circumstances, (4) the amount of benefit the action has conferred on the members of the pension plan, and (5) the relative merits of the parties' positions. *See, Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir. 1978); *Thomas v. Marshall,* 482 F.Supp. 160, 170 (S.D.Ala.1979). None of the factors discussed in these cases (or those that they cite) justify an award of attorney's

fees to the Defendant. Accordingly, the Court concludes that it is proper for each party to bear its own attorney's fees.

The Defendant's Motion for Summary Judgment will be GRANTED and Judgment entered accordingly.

SO ORDERED.